UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

LEROI, INC.,

                      Plaintiff,

                                                                              5:15-CV-0565
v.                                                                (GTS/DEP)

CSC3C, INC., d/b/a BODY GEMS,

                      Defendant.
_____

APPEARANCES:                                           OF COUNSEL:

BOND SCHOENECK & KING, PLLC            FREDERICK J.M. PRICE, ESQ.
  Counsel for Plaintiff                              JONATHAN L. GRAY, ESQ.
One Lincoln Center                                   KATE I. REID, ESQ.
Syracuse, NY 13202

ECKELL, SPARKS, LEVY, AUERBACH,       PATRICK T. HENIGAN, ESQ.
MONTE, SLOANE, MATTHEWS &
AUSLANDER, P.C.
  Counsel for Defendant
344 West Front Street
Folsom, PA 19033

UNDERBERG & KESSLER LLP                 PAUL F. KENEALLY, ESQ.
  Counsel for Defendant
300 Bausch & Lomb Place
Rochester, NY 14604

GLENN T. SUDDABY, Chief United States District Judge

## **DECISION and ORDER**

       Currently before the Court, in this copyright infringement action by LeRoi, Inc.

("Plaintiff") against CSC3C, Inc., d/b/a Body Gems ("Defendant" or "Body Gems"), is

Defendant's motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction and

improper venue pursuant to Fed. R. Civ. P. 12(b)(2) and (3). (Dkt. No. 12.) For the reasons set

forth below, Defendant's motion is denied without prejudice.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

Generally, Plaintiff's Complaint alleges as follows. (Dkt. No. 1 [Plf.'s Compl.].)

#### 1. Plaintiff's Business

Plaintiff, a New York State corporation with its principle place of business in Fulton, New York, "designs, produces, and sells unique and proprietary body jewelry." (*Id.* at ¶¶ 7, 9.) Plaintiff is the owner by assignment of a copyright registration of a "Skull Design," consisting of a "skull ornament," bearing several unique elements that, taken together, represent its Skull Design trade dress. (*Id.* at ¶ 13[a]-[g]; *accord*, Dkt. No. 1, Attach. 1, at 4[1] [U.S. Copyright Office Certificate of Registration, effective December 19, 2014].) Plaintiff's Skull Design has been in continuous and exclusive use (apart from the actions that form the basis of Plaintiff's Complaint) for more than 14 years. (Dkt. No. 1 at ¶ 18.)

#### 2. Defendant's Business and Alleged Infringing Activity

Defendant, a Pennsylvania corporation, has marketed, advertised and sold–and continues to market, advertise, and sell–skull body jewelry bearing the exact same features that make up Plaintiff's copyright protected Skull Design and distinctive aspects of its skull design trade dress ("Infringing Design").[2] (*Id.* at ¶¶ 1-6, 8, 21.) Defendant has "regularly sold and distributed goods through New York State retail outlets and distributors, and has derived substantial revenue

---

[1] Page citations to the exhibits attached to Plaintiff's Complaint refer to the pagination generated by CM/ECF, the Court's electronic filing system.

[2] Plaintiff alleges that its "Skull Design has formed the foundation of a line of skull-themed body jewelry (each including the same Skull Design, but with differences in size and composition, e.g., gold or silver) sold by [Plaintiff] and collectively branded as 'Skull Factory.'" (Dkt. No. 1 at ¶ 17.)

from those sales" as well as through the interstate sale of goods generally. (*Id.* at ¶¶ 5-6.)

In June 2014, at the "Association of Professional Piercers Show," held in Las Vegas, Nevada, Plaintiff "observed a skull design identical to [its] Skull Design" in a catalogue located at Defendant's booth. (*Id.* at ¶ 20.) Plaintiff later "obtained a copy of Body Gems' catalog[ue] advertising the" Infringing Design for sale. (*Id.*; *accord*, Dkt. No. 1, Attach. 2, at 4 ["Exhibit L," featuring, among other items, "DT-SKULL001"].) Moreover, Plaintiff observed the Infringing Design advertised on "Body Gems' social media pages on Facebook and Instagarm." (Dkt. No. 1 at ¶ 20.)

The June 2014 trade show was "not the first time Body Gems has advertised, marketed and sold the Infringing Design." (*Id.* at ¶ 27.) In May 2003, Plaintiff learned that Body Gems was advertising, marketing, and selling the Infringing Design, notified Body Gems of Plaintiff's "proprietary rights," and demanded that it cease and desist in its activities with regard to that design. (*Id.*) Body Gems agreed to do so. (*Id.*)

On December 19, 2014, Plaintiff sent a letter to Body Gems, "reminding Body Gems of [Plaintiff's] proprietary Skull Design, indicating that [Plaintiff] recently discovered that Body Gems was advertising for sale and selling the Infringing Design . . . and demanding that Body Gems cease and desist from all further manufacturing, distributing, selling, offering for sale, advertising and promoting the Infringing Design." (*Id.* at ¶ 28.) Despite Defendant's awareness of Plaintiff's rights, Defendant "has failed to substantively respond to any of [Plaintiff's] assertions and demands beyond a general denial," and has continued advertising the Infringing Design on its "social media pages[.]" (*Id.* at ¶ 30.)

Based on these factual allegations, Plaintiff's Complaint asserts five claims: (1) a claim

3

for copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 501 *et seq.*; (2) a claim for trade-dress infringement in violation of section 43 of the Lanham Act, 15 U.S.C. § 1125; (3) a claim for deceptive trade practices in violation of New York General Business Law § 349; (4) a claim for unfair competition in violation of New York State common law; and (5) a claim for unjust enrichment in violation of New York State common law. (Dkt. No. 1 at ¶¶ 32-62.) Familiarity with the particular nature of these claims, as well as the factual allegations supporting them, is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### B. Parties' Briefing on Defendant's Motion to Dismiss

#### 1. Defendant's Memorandum of Law

Generally, in support of its motion to dismiss, Defendant advances two arguments. (Dkt. No. 12, Attach. 2 [Def.'s Memo. of Law].) First, Defendant argues that Plaintiff's Complaint fails to allege facts plausibly suggesting that the Court has personal jurisdiction over Defendant pursuant to section 302 of the New York Civil Practice Law and Rules ("CPLR") (New York's long arm statute), because (a) any sales and distributions made by Defendant in New York State are sporadic, (b) Defendant does not earn significant revenue from sales in New York State, (c) Defendant has not made any effort to direct jewelry or products to New York State, (d) Defendant does not maintain any office or any personnel in New York State, and no officers of Defendant have been to New York State in ten years, (e) Defendant does not "advertise or sell products on any regular basis to New York citizens," and (f) notions of fair play and substantial justice militate against exercising personal jurisdiction over Defendant, in that "[t]he locale [for suit] was chosen for the convenience of Plaintiff and the hardship that was placed on Defendant

was ignored." (*Id*. at 3-8.[3])

Second, Defendant argues that, even if the Court concludes that it has personal jurisdiction over Defendant for purposes of this case, venue is improper under 28 U.S.C. § 1391 because (a) Defendant does not reside in, do any business in, and "may not be found" in New York State, and (b) none of the events giving rise to the Plaintiff's claims occurred in New York State.[4] (*Id.* at 8-9.)

### 2. Plaintiff's Opposition Memorandum of Law

Generally, in response to Defendant's motion to dismiss, Plaintiff advances five arguments: (1) Plaintiff has made a *prima facie* showing that Defendant has transacted business within the State of New York for purposes of CPLR § 302(a)(1), because (a) on at least one occasion, Defendant sold jewelry with its Infringing Design to a store located in this District through Defendant's commercial website, after Defendant was notified that its skull jewelry infringed Plaintiff's copyright, (b) Defendant "regularly exploited social media advertising and e-

---

[3] Page citations to Defendant's memorandum of law refer to the pagination generated by CM/ECF, the Court's electronic filing system. Defendant is respectfully reminded that, pursuant to the Court's Local Rules of Practice, (1) all pleadings, motions, and other documents presented for filing must bear consecutively-numbered pagination (N.D.N.Y. L.R. 10.1[a][7]), and (2) memoranda of law must contain a table of contents (N.D.N.Y. L.R. 7.1[a][1]).

[4] In support of its motion to dismiss, Defendant has also filed an affidavit, sworn to by Defendant's president Scott Collins. (Dkt. No. 12, Attach. 1 [Collins Aff.].) Collins asserts that Defendant (1) "has not conducted any business within" New York State "for at least ten years," (2) does not "target any business activities towards residents of" New York State, (3) "does not engage in a regular of [*sic*] persistent course of conduct in" New York State, (4) "does not derive substantial (if any) revenue from goods used or consumed in" New York State, and (5) "has no contacts with" New York State and "never expected to engage in any conduct which has consequences within" New York State including "being forced to defend an action within" New York State. (*Id.*)

commerce to market and sell its products to global clientele," including through Amazon.com ("Amazon"), and (c) a clear nexus exists between Defendant's business in New York State and Plaintiff's claims (which concern Defendant's sale of the Infringing Design) (Dkt. No. 16, Attach. 3, at 4-7 [Plf.'s Opp'n Memo. of Law]); (2) Plaintiff has made a *prima facie* showing that Defendant is subject to personal jurisdiction pursuant to CPLR § 302(a)(2) because it sold "at least one infringing good in New York" (*id.* at 7); (3) Plaintiff has made a *prima facie* showing that Defendant is also subject to personal jurisdiction in New York State under CPLR § 302(a)(3)(ii) because it has alleged facts plausibly suggesting, and submitted evidence showing, that (a) Defendant has completed out-of-state sales of the Infringing Design, (b) Defendant derives substantial review from interstate commerce, (c) Defendant should have reasonably expected that its acts would have consequences in New York State, given that Plaintiff notified Defendant about Plaintiff's proprietary interests as early as 2003, (d) Defendant's "social media webpages are replete with references to" interstate sales (including in New York, Ohio, Louisiana, Arizona, Maryland, Massachusetts, and California) and international sales (including in Belgium, Italy, Scotland, and Canada), and (e) Collins' affidavit is conclusory and insufficient to rebut Plaintiff's *prima facie* showing that the Court may properly exercise personal jurisdiction over Defendant in this case (*id.* at 8-10); (4) the Court's exercise of personal jurisdiction over Defendant comports with due process because (a) Defendant continued to sell the Infringing Design–including within the Northern District of New York–even after Plaintiff requested that Defendant cease and desist such activity in 2003, (b) Defendant has not asserted or established that litigation in New York State would be a sufficient inconvenience, and (c) Plaintiff is located in New York State (*id.* at 10-12); and (5) venue is proper in this District

6

because (a) a copyright infringement defendant "may be found," for purposes of 28 U.S.C. § 1400(a), wherever the defendant is amenable to personal jurisdiction, and (b) Defendant has not argued that a specific non-party witness is inconvenienced (*id.* at 12-13).[5]

### 3. Defendant's Reply Memorandum of Law

Generally, in its reply, Defendant advances two arguments: (1) Plaintiff has not alleged facts plausibly suggesting that the Court has specific jurisdiction over Defendant because (a) the transaction to which Plaintiff referred in its opposition to Defendant's motion occurred before Plaintiff's copyright registration of the Skull Design, and (b) Plaintiff has not asserted or

---

[5] In support of its opposition to Defendant's motion, Plaintiff has also filed two affidavits, one sworn to by James Pauldine (Dkt. No. 16, Attach. 1), and the other by David Carlson (Dkt. No. 16, Attach. 2), as well as an attorney declaration from Kate Reid (Dkt. No. 16). Pauldine asserts, in part, as follows: (1) he is the owner and president of JP Jewelers, Inc., which is located in Oswego, New York, and "has been in the business of making and selling jewelry since September 2009"; (2) Body Gems advertises its products on the website Instagram; (3) on or about October 1, 2014, Pauldine contacted Body Gems by telephone and placed an order for a "14 karat gold skull (stock code number 'SKULL001') and a few captive beads"; and (4) as shown on the invoice attached as an exhibit to Pauldine's affidavit, Pauldine paid $189.03 for the order by telephone, using a business credit card, and Body Gems shipped the order from its Feasterville, Pennsylvania, address. (Dkt. No. 16, Attach. 1, at ¶¶ 1-5.)
  Carlson asserts, in part, as follows: (1) he is employed by Resurrected Tattoo in Syracuse, New York, where he has been a "Senior Body Piercer" since 2013; (2) in February 2015, Carlson placed an order with Body Gems, by telephone, for numerous items, including "design tops, clicker designs, and moon-shaped seam rings," based on a Body Gems advertisement that he saw on the internet website Instagram; and (3) as shown on the invoice attached as an exhibit to Carlson's affidavit, Resurrected Tattoo paid $2,261.73 for the order, which was shipped to its Syracuse studio on February 18, 2015. (Dkt. No. 16, Attach. 2, at ¶¶ 1-5.)
  Finally, Reid asserts, in part, as follows: (1) Defendant operates a "'store front' business page" on Amazon.com, which Reid accessed online in October 2015 (Dkt. No. 16 at ¶ 2 [Reid Decl.]; *accord*, *id.* at 5 ["Exhibit 1"]); (2) Defendant has posted "online advertisements on facebook.com," including an advertisement documenting a "recent shipment of belly rings to New York" (*id.* at ¶ 3; *accord*, *id.* at 7 ["Exhibit 2"]); (3) the Facebook page of "I Prick U Body Works, a body piercing business in Staten Island, New York," stated that that business had purchased jewelry from Defendant (*id.* at ¶ 4; *accord*, *id.* at 9 ["Exhibit 3"]); and (4) in postings to its own Facebook page, Defendant announced that it had shipped jewelry to Belgium, Italy, Scotland, and Canada (*id.* at ¶ 5; *accord*, *id.* at 11-16 ["Exhibit 4"]).

7

established that the jewelry at issue in that transaction was "even arguably similar to the item [for] which Plaintiff claims protection" (Dkt. No. 17 at 2-3 [Def.'s Reply Memo. of Law]); and (2) Plaintiff has not alleged facts plausibly suggesting that the Court has general jurisdiction over Defendant because Plaintiff has produced evidence of "perhaps two transactions" that were "random" and of "minimal economic value" to Defendant, rather than continuous and systematic (*id.* at 3-4).

## II. GOVERNING LEGAL STANDARDS

### A. Standard Governing Motion to Dismiss for Lack of Personal Jurisdiction

"When a defendant moves to dismiss a complaint under Rule 12(b)(2) for want of personal jurisdiction, courts must perform a two-part analysis." *Harris v. Ware*, 04-CV-1120, 2005 WL 503935, at *1 (E.D.N.Y. Mar. 4, 2005); *accord, Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167-68 (2d Cir. 2015). "First, personal jurisdiction over a defendant must be established under the law of the state where the federal court sits." *Harris*, 2005 WL 503935, at *1 (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 [2d Cir. 1999]); *accord, Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007). "Under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure, the service of a summons establishes personal jurisdiction over a defendant 'who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located.'" *Harris*, 2005 WL 503935, at *1 (citation omitted).

"Second, if jurisdiction is established under the governing statute, courts must determine whether the exercise of jurisdiction under the relevant state law would violate the defendant's due process rights." *Id.* (citation omitted); *accord, Best Van Lines, Inc.*, 480 F.3d at 242-43.

These due process rights require that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." *Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 [2d Cir. 2006]). In determining whether the required showing has been made, district courts "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs." *Licci*, 732 F.3d at 167 (quoting *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 [2d Cir. 2010]); *accord, A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985).

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway." *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981). Unless a court conducts "a full-blown evidentiary hearing," the plaintiff need only make "a prima facie showing of jurisdiction through its own affidavits and supporting materials to survive a motion to dismiss under Rule 12(b)(2)." *Harris*, 2005 WL 503935, at *1 (internal quotation marks and citations omitted). What this means is that, "prior to discovery, a plaintiff may defeat a jurisdiction-testing motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Id.* (internal quotation marks and citations omitted); *accord, Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) ("Such a [*prima facie*] showing entails making 'legally sufficient allegations of jurisdiction,' including 'an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant.'") (quoting *In re*

9

*Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 [2d Cir. 2003] [per curiam]). However, where a defendant "rebuts [a plaintiff's] unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction–and plaintiff[] do[es] not counter that evidence–the allegation may be deemed refuted." *MEE Direct LLC v. Tran Source Logistics, Inc.*, 12-CV-6916, 2012 WL 6700067, at *2 (S.D.N.Y. Dec. 26, 2012) (citation, internal quotation marks, and footnote omitted).

### B. Standard Governing Motion to Dismiss for Improper Venue

Section 1391 of Title 28 of the United States Code provides, in pertinent part, that a civil action is properly brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). As in a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that venue is proper when served with a motion to dismiss under Fed. R. Civ. P. 12(b)(3). *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005). Where the Court relies solely on the submissions of the parties in ruling on the motion, the plaintiff satisfies that burden by pleading facts sufficient to demonstrate a *prima facie* showing of jurisdiction or venue by way of the complaint's allegations, affidavits, and other supporting evidence, which are evaluated in the light most favorable to the plaintiff. *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364-65 (2d Cir. 1986).

### III. ANALYSIS

### A. Whether Plaintiff has Made a *Prima Facie* Showing that the Court May Exercise Personal Jurisdiction Over Defendant Pursuant to CPLR § 302

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 16, Attach. 3, at 4-12 [Plf.'s Opp'n Memo. of Law].) To those reasons, the Court adds the following four points, which are intended to supplement (and not to supplant) those reasons.

First, with respect to CPLR § 302(a)(1),[6] Defendant argues that the single New York State transaction allegedly involving the Skull Design identified by Plaintiff (i.e., Pauldine's purchase of a "gold skull" in October 2014) occurred before Plaintiff obtained its copyright registration of the Skull Design, and that Plaintiff has not asserted or established that the gold skull was similar to the Plaintiff's Skull Design. (Dkt. No. 17 at 2-3 [Def.'s Reply Memo. of Law].) The Court finds that, at least at this juncture, Defendant's arguments are unpersuasive.

As an initial matter, the fact that Plaintiff has identified only one specific transaction potentially involving the Skull Design is not dispositive because CPLR § 302(a)(1) "is a 'single act statute' and proof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloé*, 616 F.3d at 170 (citations omitted). As to the second requirement of CPLR 302(a)(1), the Court finds that Defendant's New York State sales of allegedly infringing goods are intimately tied to Plaintiff's claims, which concern copyright infringement. *See Carr-Stock v.*

---

[6] "[A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." CPLR § 301(a)(1). "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quotation marks omitted).

*Orthotic Rehab. Prods., Inc.*, 832 F. Supp. 2d 229, 237 (W.D.N.Y. 2011) (concluding that plaintiff had satisfied the second requirement's "nexus test" because "Defendant's New York sales of allegedly infringing goods are intimately tied to Plaintiff's patent infringement claim[, and i]n cases involving claims of patent infringement, 'the tortious act occurs where products are distributed and infringing sales are made'") (quoting *Millennium, L.P. v. Dakota Imaging, Inc.*, 03-CV-1838, 2003 WL 22940488, at *5 [S.D.N.Y. Dec. 15, 2003]); *Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.*, 923 F. Supp. 433, 436 (S.D.N.Y. 1996) (concluding that personal jurisdiction existed because shipments of allegedly infringing goods into New York "were purposeful and substantially related to plaintiffs' claim of trademark infringement"); *Chloé*, 616 F.3d at 170 (noting that a "single act of shipping a counterfeit Chloé bag might well be sufficient, by itself, to subject [defendant] to the jurisdiction of a New York court under section 302(a)(1)");[7] *see also McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)

---

[7] In *Chloé*, the Second Circuit did not decide whether "the single act of shipping a counterfeit" product was sufficient to confer personal jurisdiction, because, among other things, the defendant "also operated a highly interactive website" where bags were offered for sale to New York (and other) consumers. *Chloé*, 616 F.3d at 170. In this case, the proof submitted by Plaintiff supports the conclusion that Defendant's internet presence includes (1) a "'store front' business page" on Amazon.com (Dkt. No. 16 at ¶ 2 [Reid Decl.]), (2) product advertisements on its Facebook page, including an announcement that it had shipped products to New York, other states, and other countries (*id.* at ¶¶ 3-6), and (3) product advertisements on Instagram (Dkt. No. 16, Attach. 1, at ¶ 3 [Pauldine Aff.]; Dkt. No. 16, Attach. 2, at ¶ 3 [Carlson Aff.]). *See also Two's Co., Inc. v. Hudson*, 13-CV-3338, 2014 WL 903035, at *5 (S.D.N.Y. Mar. 6, 2014) ("Creating a site, like placing a product into the stream of commerce, may be felt nationwide–or even worldwide–but, without more, it is not an act purposefully directed toward the forum state. That 'something more' in this case is the shipping of products from Defendant to consumers in New York. The combination of the semi-interactive website which allows out-of-state consumers to commence a purchase through the website and the actual sale of products to New York on several occasions satisfies the 'transacting business' prong of New York's long-arm statute.") (citation and internal quotation marks omitted); *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, 15-CV-8459, 2016 WL 3748480, at *3 (S.D.N.Y. July 8, 2016) ("Regularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront' or its interactivity to the same extent that they control their

(requiring "some articulable nexus between the business transacted and the cause of action sued upon"). Moreover, while Defendant's observation that the October 2014 sale apparently occurred before Plaintiff's copyright was registered is well taken (and may be of relevance with regard to Plaintiff's ability to recover or the extent of its recovery), Plaintiff's Complaint alleges that Defendant continues to advertise, market, and sell products constituting the Infringing Design, and that Defendant has not "substantively responded" to Plaintiff's December 2014 cease and desist letter. (Dkt. No. 1 at ¶¶ 21, 30.) Defendant has not asserted otherwise, and also has not asserted that the 2014 sale of the gold skull was the only (or even the most recent) such sale to a New York customer. *See, e.g., Carr-Stock*, 832 F. Supp. 2d at 237 ("Plaintiff has established the first requirement by providing this Court with an affidavit alleging that Defendant sells and ships goods to customers in the Western District of New York, including devices that violate Plaintiff's patent. . . . That the sales transactions on which this affidavit is based pre-date the alleged breach [of contract] is not fatal to Plaintiff's argument, where this Court has not granted leave for further discovery and where Defendant has submitted no affidavit that it does not continue to sell allegedly infringing goods in New York and the Western District."). Finally, Pauldine's affidavit identifies the gold skull that Pauldine purchased as stock code number "SKULL001" (Dkt. No. 16, Attach. 1, at ¶ 3 [Pauldine Aff.]; *accord, id.* at 4 ["Exhibit 1," Invoice]), which is a highly similar stock code number associated with a Body Gems catalogue item that Plaintiff's Complaint identifies as the Infringing Design (Dkt. No. 1 at ¶ 20 [Plf.'s Compl.]; *accord*, Dkt No. 1, Attach. 2, at 4 ["Exhibit L," featuring, among other

---

own highly interactive website."); *EnviroCare Techs., LLC v. Simanovsky*, 11-CV-3458, 2012 WL 2001443, at *3 (E.D.N.Y. June 4, 2012) (concluding that jurisdiction existed where defendants sold "allegedly infringing goods . . . online through [their] Amazon storefront and the goods were shipped to New York by Amazon"). In its reply to Plaintiff's opposition, Defendant does not address any aspect of its online presence or Plaintiff's arguments related thereto.

items, "DT-SKULL001"].)

Second, while CPLR § 302(a)(2)[8] generally "reach[es] only tortious acts performed by a defendant who was physically present in New York when he committed the act" (*Gordon v. Invisible Children, Inc.*, 14-CV-4122, 2015 WL 5671919, at *5 (S.D.N.Y. Sept. 24, 2015) (quoting *Virgin Enters. Ltd. v. Virgin Eves LAC*, 08-CV-8564, 2009 WL 3241529, at *4 [S.D.N.Y. Sept. 30, 2009]), courts applying this provision "have held that [c]opyright infringement is deemed to take place at the point of consumer purchase and therefore [u]nder certain circumstances, a non-domiciliary who merely supplies infringing goods to the party that ultimately passes them off in New York may be subject to jurisdiction under 302(a)(2)." *Evergreen Media Holdings, LLC v. Warren*, 105 F. Supp. 3d 192, 198 (D. Conn. 2015) (collecting cases) (citations, footnote, and internal quotation marks omitted). "Specifically, the supplier must sell the goods to the latter party 'with full knowledge that the[y] . . . will or can reasonably be expected to be resold in the jurisdiction, where [they] will infringe the plaintiff's mark." *Dan-Dee Int'l., Ltd. v. Kmart Corp.*, 99-CV-11689, 2000 WL 1346865, at *4 (S.D.N.Y. Sept. 19, 2000) (quoting *Topps Co. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 91 [S.D.N.Y. 1997]); *accord, Mag Jewelry Co., Inc. v. Cherokee, Inc.*, 02-CV-0466, 2004 WL 825588, at *2 (E.D.N.Y. Mar. 31, 2004) ("This Court is imbued with personal jurisdiction over non-domiciliary copyright infringers under CPLR 302(a)(2) in several circumstances[, including] when the infringer has offered at least one copy of an infringing work for sale in New York, even if there is no actual sale, [or] when the infringer has sold a product to a company with full knowledge that the product would or could reasonably be expected to be resold in the

---

[8] Section 302(a)(2) of the CPLR provides that a court may exercise personal jurisdiction over a non-domiciliary "who in person or through an agent . . . commits a tortious act within the state . . . ." CPLR § 302(a)(2).

14

jurisdiction, where it would infringe the plaintiff's mark.") (internal citations and quotation marks omitted). In this case, the Court concludes that Defendant should reasonably have expected that the products it sold to jewelry retail customers located in New York State–including the allegedly infringing gold skull sold to Pauldine (who owned JP Jewelers)–would be resold to customers in New York State.

Third, with respect to CPLR § 302(a)(3)(ii),[9] Defendant argues that it does not derive substantial revenue from sales in New York State (Dkt. No. 12, Attach. 2, at 5 [Def.'s Memo. of Law]; *accord*, Dkt. No. 12, Attach. 1 [Collins Aff.] [asserting that Defendant "does not derive substantial (if any) revenue from goods used or consumed in the State of New York"].) While revenue derived from sales in New York State is a pertinent factor in determining whether a non-domiciliary is subject to personal jurisdiction in New York under CPLR § 302(a)(3)(i), the issue under CPLR § 302(a)(3)(ii) is whether the non-domiciliary "derives substantial revenue from *interstate or international* commerce." CPLR § 302(a)(3)(ii) (emphasis added). Defendant advances no argument with regard to the extent of the revenue it derives from interstate or international commerce, or the proportionality of such revenue to the revenue it derives from local commerce. *See LaMarca*, 95 N.Y.2d at 215 (explaining that the "substantial revenue" requirement "is designed to narrow 'the long-arm reach to preclude the exercise of jurisdiction

---

[9] "[A] court may exercise personal jurisdiction over any non-domiciliary, . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce[.]" CPLR § 302(a)(3)(ii). "This provision rests the exercise of jurisdiction on five elements: (1) [t]he defendant committed a tortious act outside the state; (2) the cause of action arose from that act; (3) the act caused injury to a person or property within the state; (4) the defendant expected or should reasonably have expected the act to have consequences in the state; (5) the defendant derives substantial revenue from interstate or international commerce." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 106 (2d Cir. 2006) (citing *LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 [N.Y. 2000]).

over nondomiciliaries who might cause direct, foreseeable injury within the State but whose business operations are of a local character'") (quoting *Ingraham v. Carroll*, 99 N.Y.2d 592, 599 [1997]); *see also Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 485-86 (S.D.N.Y. 2013) ("No specific dollar threshold is required for the revenue to be deemed substantial, and the main concern is the overall nature of the defendant's business and the extent to which he can fairly be expected to defend lawsuits in foreign forums.") (quoting *Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F. Supp. 2d 228, 242 [S.D.N.Y. 2010]).

Fourth, and finally, in its reply, Defendant argues that, in light of two United States Supreme Court cases decided since *Queen Bee*, "the court may not exercise general jurisdiction over Defendant." (Dkt. No. 17 at 3-4 [citing *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)]). However, Plaintiff does not argue that the Court may exercise general jurisdiction over Defendant, as provided in CPLR § 301, New York State's general jurisdiction statute; rather, as discussed above, Plaintiff argues that the Court may exercise specific jurisdiction over Defendant pursuant to various provisions of CPLR § 302, New York's long-arm statute, which confers specific jurisdiction in certain limited circumstances. Accordingly, the Court has no occasion to determine whether it may exercise general jurisdiction over Defendant.

For each of these reasons, and construing all of the filed pleadings and affidavits in the light most favorable to Plaintiff at the early stage of this case (*see, supra,* Part II.A of this Decision and Order), the Court concludes that Plaintiff has met its burden of making a *prima facie* showing that personal jurisdiction over Defendant exists pursuant to CPLR § 302(a)(1), (2),

and (3)(ii).[10] However, because the Court's conclusion is based on the above-described factual allegations and preliminary evidence, the Court denies Defendant's motion only without prejudice.

>    **B.    Whether Plaintiff Has Made a *Prima Facie* Showing that Exercising Personal Jurisdiction over Defendant Comports with the Due Process Clause**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law.[11] (Dkt. No. 16, Attach. 3, at 10-12 [Plf.'s Opp'n Memo. of Law].) The Court would add only two brief points, which, again, are intended to supplement (and not to supplant) those reasons.

First, the Court's finding with regard to this issue is based also on the points discussed above in Part III.A of this Decision and Order, and the fact that Defendant has not sufficiently countered the factual allegations asserted, and declarations adduced by, Plaintiff.

---

[10] "Eventually, of course, the plaintiff must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. But until such a hearing is held, a prima facie showing suffices, notwithstanding any controverting presentation by the moving party, to defeat the motion." *Lifeguard Licencing Corp.*, 2016 WL 3748480, at *2 (quoting *Marine Midland Bank, N.A.*, 664 F.2d at 904).

[11] *See also Chlo*é, 616 F.3d at 171 ("We conclude that assertion of personal jurisdiction over Ubaldelli comports with due process for the same reasons that it satisfies New York's long-arm statute. Namely, by offering bags for sale to New York consumers on [defendant's] website and by selling bags–including at least one counterfeit Chloé bag–to New York consumers, Ubaldelli has 'purposefully avail[ed] [him]self of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 [1985]); *id.* at 173 ("In light of our holding that Chloé 'has made a threshold showing of minimum contacts at the first stage of the inquiry,' Ubaldelli's generalized complaints of inconvenience arising from having to defend himself from suit in New York do not add up to 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'") (quoting *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 568 [2d Cir. 1996]) (internal citations and quotation marks omitted).

Second, again, because the Court's finding is based on the above-described factual allegations and preliminary evidence, the Court denies this part of Defendant's motion only without prejudice.

### C. Whether Plaintiff Has Made a *Prima Facie* Showing that Venue Is Proper

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Plaintiff's opposition memorandum of law. (Dkt. No. 16, Attach. 3, at 12-13 [Plf.'s Opp'n Memo. of Law].) The Court would add only three brief points, which are intended to supplement (and not to supplant) those reasons.

First, "[i]t is well-established that a defendant 'may be found' in any district in which he is amenable to personal jurisdiction; thus, venue and jurisdiction are coextensive.'" *Mag Jewelry Co., Inc.*, 2004 WL 825588, at *1 (quoting *Editorial Musical Latino Americana, S.A. v. Mar Int'l Records, Inc.*, 829 F. Supp. 62, 66 [S.D.N.Y. 1993]) (internal quotation marks omitted); *accord*, 28 U.S.C. § 1391(c)(2).

Second, Defendant does not request a change of venue pursuant to 28 U.S.C. § 1404(b).

Third, again, because the Court's finding is based on the above-described factual allegations and preliminary evidence, the Court denies this part of Defendant's motion only without prejudice.

**ACCORDINGLY**, it is

**ORDERED** that Defendant's motion to dismiss Plaintiff's Complaint for lack of personal jurisdiction and improper venue (Dkt. No. 12) is **<u>DENIED without prejudice</u>**; and it is further

**ORDERED** that Defendant file an answer to the Plaintiff's Complaint within 14 days of the date of this Decision & Order pursuant to Fed.R.Civ.P. Rule 12(a)(4)(a), and this case is referred back to Magistrate Judge Peebles for the setting of pretrial scheduling deadlines.

Dated: September 19, 2016
       Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge